Francis J. **BRADY**

v.

Abraham A. **RIBICOFF**, Secretary of
Health, Education and Welfare.

Civ. No. 12720.

United States District Court
D. Maryland.

May 5, 1961.

Harold Buchman, Lawrence B. Cosh-near, Baltimore, Md., for plaintiff.

Joseph D. Tydings, U. S. Atty., and Carl J. Lorenz, Jr., Asst. U. S. Atty., Baltimore, Md., for defendant.

THOMSEN, Chief Judge.

This is an action to review a decision rendered by a hearing examiner, which decision became the "final decision" of the Secretary when the Appeals Council denied the plaintiff's request for review. The examiner held that plaintiff had failed to establish that he was entitled to a period of disability, a so-called "disability freeze", under Section 216(i) of the Social Security Act, 42 U.S.C.A. § 416(i), or to disability insurance benefits under Section 223 of the Act, 42 U.S.C.A. § 423. The issue in this case is whether there is substantial evidence in the rec-ord taken as a whole to support that decision.

Plaintiff last met the quarter of coverage requirement in the quarter ending December 31, 1953. Therefore, to be eligible for monthly insurance benefits, based on his application filed on January 14, 1959, he must have been under a continuous "disability" as defined, beginning not later than December 31, 1953, and continuing without interruption until the filing of his application. Section 223(c)(1) of the Act, 42 U.S.C.A. § 423(c)(1). The term "disability", as defined in the Act, means: "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration. An individual shall not be considered to be under a disability unless he furnishes such proof of the existence thereof as may be required." Sec. 223(c)(2) of the Act, 42 U.S.C.A. § 423(c)(2).

Plaintiff had previously, on July 8, 1955, filed an application to establish a period of disability, which had been denied by the Bureau of Old-Age and Survivors Insurance on December 1, 1955. No appeal had been taken from that denial.

The present application, filed on January 14, 1959, asked for disability benefits, for a determination of disability, and for a reconsideration of his earlier application. The earlier application was considered and denied, and the new application was also denied by the Bureau, after the Maryland Division of Vocational Rehabilitation had found that plaintiff was not disabled on December 31, 1953, when his special insured status expired. The hearing before the examiner was held on September 13, 1960. Plaintiff was ill and did not appear, but he was represented by counsel, who called plaintiff's wife as a witness and offered in evidence certain hospital records and a letter from Dr. William P. McKeever, dated June 15, 1960, addressed to plaintiff's attorney.

The record shows that plaintiff was born in 1897, and had gone to high school for four years, had been a laborer in distilleries, a machinist, a steamfitter, and a plumber. His last job had been as a watchman and guard for the Coca Cola Company from which he had been laid off in April 1950 because guards were no longer needed. Thereafter he collected unemployment compensation until May, 1951. He was admitted to the Johns Hopkins Hospital for the period May 30–June 7, 1951, complaining of chest pain. The diagnosis was coronary artery disease, angina pectoris, intermittent claudications and generalized arteriosclerosis. There was also a history of cholecystitis five years before EKG's taken during his hospitalization were all within normal limits, and the pain was relieved with nitroglycerine. He was placed on a diet and told to return to the clinic. The letter from Dr. McKeever said that he had reviewed the discharge summary (which he had written nine years before) and that it "would appear unlikely" that plaintiff was "able to engage in any substantial gainful activity in April 1951 by reason of the above mentioned physical impairment which would probably be of long continued duration." However, there is no evidence plaintiff was told that he could not work.

His wife testified that he had not worked thereafter; that he had applied for work on a number of occasions after June 1951, but had failed to pass the physical examinations required by the prospective employers. It does not appear, however, that plaintiff ever registered with the State or any other employment agency.

On February 12, 1955, more than 13 months after his special insured status expired, plaintiff sought treatment for a peptic ulcer that had bothered him for three days, and for chest pains. He said that he had had a number of episodes of angina and dyspnea, especially at night. An EKG showed no change from the normal EKG of June 1951. The diagnosis was arteriosclerotic cardiovascular disease with angina pectoris and an active peptic ulcer.

A report from Dr. A. C. Sollod in January 1959 stated that he had seen plaintiff first in September 1956, and that an EKG of undisclosed date, had shown signs of myocardial (heart muscle) damage. A cancer of the soft palate and other troubles had developed in 1958, and plaintiff was undoubtedly disabled thereafter.

After outlining the evidence taken at the hearing, the decision stated:

"The examiner has carefully considered the foregoing evidence and all of the other evidence in this case and believes that he must find from that evidence that the claimant, at the time of work eligibility, did not have an impairment or impairments of sufficient severity to prevent him from engaging in any substantial gainful activity. Although the claimant is shown to have suffered angina pectoris in 1951, with intermittent claudication and generalized arteriosclerosis, the evidence does not, in the opinion of the examiner, show a degree of severity which would prevent an individual from engaging in substantial gainful activity. Prior to the expiration of work eligibility there was no evidence of carcinoma. Upon proper medication and the use of nitroglycerin, the attacks of angina were relieved and the electrocardiogram examinations made at that time and later resulted in normal interpretations. Fluoroscopic examination also showed no significant abnormalities. Although the subjective symptom was that of pain which would indicate angina pectoris, the objective evidence did not and does not show significant impairment. That the claimant himself believed he was able to work was demonstrated by his attempts to secure work in 1953, 1954 and 1955. His failure to secure work was not because of his inability to do work but rather because of physical standards set by prospective employers

in selecting personnel. The claimant's unemployment was not caused by physical difficulty but because of layoff. Although it is clear that the claimant is now so disabled as to be unable to engage in substantial gainful activity, there is nothing in the record to permit a conclusion that the condition of carcinoma existed prior to the expiration of work eligibility. Although in 1951 the claimant had a blood pressure of 130/90, such pressure was unaccompanied by cardiomegaly, renal impairment, retinal change or edema. The examiner believes and finds that although the claimant suffered from angina and generalized arteriosclerosis, there is nothing in the medical evidence to show that the condition was not, during the time of work eligibility, kept under control by medication or that it resulted in a condition preventing the claimant from engaging in any substantial activity.

"For all of the foregoing reasons, therefore, the examiner believes and finds that the claimant, at the time of work eligibility, did not have an impairment or impairments of sufficient severity to prevent him from engaging in any substantial gainful activity."

There is evidence in the record from which the examiner might have reached a different conclusion. On the bare record, without seeing and hearing the only witness, one might conclude that the weight of the evidence was in favor of the claim. But I cannot say that there was no substantial evidence to support the examiner's decision. Plaintiff's case was weak; arrangements could have been made to take his testimony at some convenient time and place; but his attorney preferred to rely on the testimony of the wife (about matters which happened six or eight years before), on the hospital records (which did not themselves prove the claimed disability), and upon the letter from Dr. McKeever (which was very brief, did not cover the important

years 1953 and 1954, and was by no means conclusive). The rest of the evidence was about conditions more than a year after December 31, 1953.

If we were dealing with a recent period, when the facts would be fresh in people's minds, as they must have been at the time of the previous hearing in 1955, I would be inclined to remand the case for further testimony. But the plaintiff is now quite ill, and there is no reason to believe that much if anything of value could be added to the present record. Plaintiff has not asked that the case be remanded, rather that the decision be reversed.

Applying the required legal tests, I cannot say that there is no substantial evidence in the record taken as a whole to support the decision.

The Clerk is instructed to enter a judgment affirming the decision of the Secretary.